Nicholson, C. J.,
delivered the opinion of the court.
On the 26th of April, 1872, the Attorney General for the 13th Judicial District issued to the sheriff of Madison county a notice to Joseph Allison and others, that he would, at the May Term, 1872, of the Circuit Court for Madison county, make a motion against them, as securities on the official bond of W. C. Bobinson, deceased, as collector of faxes of Madison county, for 1866 and 1867, for $5,039.12, the amount of revenue due the State by said Bobinson as tax-collector for the year 1867, as per statement of the Comptroller of the State.
This notice was served on the defendants on the 27th of April, 1872, which was more than five days before the commencement of the May Term of the Circuit Court, which began on the first Monday thereof.
A copy of the official bond of W. C. Bobinson as tax-collector for 1866 and 1867, certified by the Comptroller, and also a certified statement of the ac *5 count of W. C. Robinson as tax-collector for .1866 and 1867, showing a balance against him for the year 1867, of $5,039.12, were filed in the office of the clerk, and so marked by him on the 7th of May, 1872.
On the 22d of May, 1872, the Attorney General for the district entered upon the minutes of the court the motion of which he had given notice. This motion sets out in detail every recital requisite to constitute the basis of a regular judgment, referring specifically to the certified copies of the official bond of the tax-collector and of the Comptroller’s statement of his account, as being on file in the cause.
On the 27th of May, 1872, the counsel for defendants appeared and moved the court to discharge the motion made by the Attoruey General for the district for want of proper, legal, and sufficient notice, but protesting that they only appeared for that special purpose.
On the 31st of May, 1872, the Circuit Judge sustained the motion of the defendants’ counsel, and dismissed the motion of the Attorney General. From this judgment the State appeals.
The ground on which the court dismissed the motion of the Attorney General seems to have been, that the notice was insufficient, inasmuch as it did not designate a day of the term on which the motion would be made. It was decided long ago, and the decision has ever since been followed, that when notice is given in a summary proceeding, that a mo *6 tion .will be made on a specified day, it must be' made on that day, or the proceeding is void, unless cured by the appearance of the parties: 6 Yerg., 312; 7 Yerg., 143. But it by no means follows that a notice given five days before the commencement of a term, that the motion will be made at that term,, is void for insufficiency; It may operate inconveniently to parties to wait on the movements of the Attorney General for several days or weeks, but only suggests a good reason why the Attorney General should not unnecessarily delay the making of the motion. It does not make the notice the less valid or effective. If he should delay to a time wheii the parties might be embarrassed in being able then to-procure their evidence for defense, this would always-address itself successfully to the Court on an application for a continuance.
But, in this case, the Attorney General removed' all ground for complaint. Besides being very specific in his notice as to the grounds of the proposed motion, it seems that he filed in the office, on first day of the term, the evidence on which he had notified them he would rely in support of his -motion. It further appears that defendants waited five days after the motion was made before they made their special appearance for the purpose of objecting to the sufficiency of the notice, and that their motion was held over by the Court for four days before it was decided.
We are of opinion that the notice was sufficient, and that the Circuit Judge erred in dismissing the *7 motion of .the Attorney General. See Young v. Hare, 11 Hum., 303.
The question next presented is, whether we shall remand the cause for trial in the Circuit Court, or proceed to render the judgment here which the Circuit Judge ought to have rendered below? We find that when the Attorney General made his motion, he based it specifically upon a certified copy of the official bond of the tax-collector, and on an authenticated statement of the account showing the amount due from the collector for the year 1867, as appears upon the books of the Comptroller, both of which papers were filed with the motion. This was all the evidence required by the statute to entitle the State to a judgment.
It is insisted by the Attorney General for the State that, upon making the motion and adducing this evidence, the law made it the duty of the court to give judgment against the defendants for the amount thus shown to be due, unless for sufficient reason, suggested on oath, the court should require the production of the original bond. He maintains that the law not only makes this evidence sufficient, but that the court has no discretion, but j.s bound to render judgment, and that the defendants are remitted to the Comptroller for the settlement of • the judgment by the allowance by him of any authenticated claims due the tax collector.
To determine the question thus raised, it becomes necessary to construe the provisions of the Code bearing upon the subject.
*8 The Comptroller of the treasury is now a constitutional officer of the executive department of the government, and has the superintendence and control of the finances of the State, with his powers and duties specifically defined by law. It is his duty, among many others particularly enjoined, to examine and adjust all accounts and claims against the State, which are by law to be paid out of the treasury. To keep in suitable books, with every person in every county in the State, authorized by law to collect and receive any part of the revenue, a regular account, and to transmit to the District Attorney in any district in which a collecting officer may be delinquent, a statement of the sum claimed by the State, with directions to the attorney to proceed by motion against the delinquent and his securities in the Circuit Court: Code, 207.
The Comptroller’s statement of the amount due the State from any delinquent shall be prima facie evidence of such amount, and a copy of his bond from the Comptroller’s office shall be received as evidence of the facts appearing on its face, unless for sufficient reason, suggested on oath, the court require the production of the original: Code, 732.
The court shall render judgment against him and his sureties for the amount appearing due from the statement of the Comptroller, or for the penalty of the bond, where there is no statement: Code, 733.
If there be no statement of the Comptroller, a judgment nisi shall be rendered for the penalty of the bond, and the defendant may have an issue made *9 up to prove the amount due, and judgment final shall be given for such amount: Code, 734.
"Where a judgment has been obtained against a delinquent officer, all bona fide claims due him, properly authenticated, ghall be allowed by the Comptroller on settlement of the judgment: Code, 742.
It is observed that two classes of cases are provided for: 1. Where the books of the Comptroller furnish no evidence of the amount due. In that case, the motion is based upon a copy of the bond, and, upon its production, the court is required to enter judgment nisi for the penalty of the bond; no provision is made authorizing the delinquent to dispute the right to such judgment. But he has the right, after the judgment nisi is rendered to have an issue made up, to make proof of any credits to which he may be entitled. This proof devolves entirely on him, for the reason that the Comptroller’s books furnish no other evidence than a copy of the bond. Upon this issue, the judgment is to be final.
The other casé is where the Comptroller’s books contain the evidence of the amount of the delinquency. In that case, the authenticated copy from the Comptroller’s books is made prima facie evidence of the amount due the State. Upon the production of this evidence, with a copy of the bond, it is made the imperative duty of the Court to render judgment against the delinquent, and for the amount appearing due from the statement of the Comptroller. The language of the law is explicit, emphatic, and mandatory —“the court shall render judgment” — but not only *10 so, but for the specific amount stated by the Comptroller. This language manifestly contemplates no trial of an issue as to the amount due.
But how is this to be reconciled with the previous sections which makes the Comptroller’s statement prima facie evidence of the amount. This necessarily implies that the statement is not conclusive evidence, but that the presumption may be rebutted by proof. But it is observed, that the judgment ordered to be entered is not declared to be a final judgment, as in the case where no statement is furnished. It is observed further, that by s. 742 the Comptroller is to settle with the delinquent collector upon the basis of the judgment, and on that settlement he is to allow all bona fide claims due the collector. The judgment, therefore, which is based on the statement, is not conclusive against the collector. The only fair interpretation of the several provisions is, that while the statement of the Comptroller is only prima facie evidence of the amount due, it is to be held by the court-sufficient for the rendition of a judgment for the amount shown by the statement, which amount shall not be controverted before the court, but which may be controverted before the Comptroller on settlement of the judgment with the Comptroller. The effect of the policy thus established is, to withdraw from the court the settlement of the accounts of delinquent collectors and to turn them over, after judgment, to the settlement of the financial officer, whose business it is to examine and adjust all claims and accounts, against the State, and whose official books furnish the proper *11 evidence for such settlement. The policy was to send the delinquent collector to the Comptroller’s office for settlement, and not to require the' Comptroller to attend the courts in the several counties, with his books, for the purpose of contesting issues with the delinquent officers. Whether this was good policy or not, is not a question for our discussion. We find the policy so written in the statutes and our duty is to declare and enforce it.
Upon our construction of the law, therefore, it was the duty of the Circuit Judge, upon the motion of the Attorney General, and the production of the authenticated statement of the Comptroller, and a certified copy of the collector’s bond, at once to give judgment against the defendants for the amount shown to be due by the statement. This judgment, upon application to the Comptroller, to be subject to such credits as, upon settlement, the Comptroller should find the collector was entitled to, and for any balance an execution would issue.
But the question now presents itself, can this court proceed to render the judgment which the court below ought to have rendered ? We are of opinion that the case is not before us in a shape to authorize us to render judgment. Defendants interposed a motion which precluded the Attorney General from offering the evidence on which he claimed a judgment. The evidence, though on file, was not offered or used, and could not be until the preliminary motion was disposed of. The judgment of the court on that motion ended the case, and left the evidence on which the Attorney *12 General intended to rely, outside of the case. It is not brought before us by bill of exceptions or otherwise than as it is copied into the transcript as having been filed in the case. Besides, the defendants have a right, upon proper reason shown, to require the production of the original bond of the collector on the trial.
We have not examined the terms or conditions of the bond copied into the record, as it is not before us for any purpose, and it is not intended to prejudice the defendants as to any defense arising thereunder to which they may be entitled under the provisions of the Code.* For these reasons we are bound to refuse the judgment asked for here, but we reverse the judgment of the Circuit Judge, and remand the cause to be proceeded in as indicated in this opinion.

 This probably alludes to the restrictive provisions of ss. 773-776.